1  RICHARD R. PATCH (State Bar No. 88049)
   HOWARD A. SLAVITT (State Bar No. 172840)
2  FREDRICK C. CROMBIE (State Bar No. 244051)
   BENJAMIN C. PULLIAM (State Bar No. 294628)
3  JAMES M. DARLING (State Bar No. 327979)
   COBLENTZ PATCH DUFFY & BASS LLP
4  One Montgomery Street, Suite 3000
   San Francisco, California 94104-5500
5  Telephone: 415.391.4800
   Facsimile: 415.989.1663
6  Email: ef-rrp@cpdb.com
          ef-has@cpdb.com
7          ef-fcc@cpdb.com
          ef-bcp@cpdb.com
8          ef-jmd@cpdb.com

9  Attorneys for Plaintiffs
   SACRAMENTO DOWNTOWN ARENA LLC;
10 SACRAMENTO KINGS LIMITED
   PARTNERSHIP; SAC MUB1 HOTEL, LLC;
11 and SGD RETAIL LLC

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

12              **UNITED STATES DISTRICT COURT**

13      **EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

14

15 SACRAMENTO DOWNTOWN ARENA          Case No. 2:21-cv-00441-KJM-DB
   LLC; SACRAMENTO KINGS LIMITED
16 PARTNERSHIP; SAC MUB1 HOTEL, LLC;   **PLAINTIFFS' OPPOSITION TO**
   and SGD RETAIL LLC,                 **DEFENDANT'S MOTION FOR**
17                                      **RECONSIDERATION OR FOR**
                                        **CERTIFICATION OF AN**
18              Plaintiffs,             **INTERLOCUTORY APPEAL**

19         v.                           Judge:   Hon. Kimberly J. Mueller
                                        Date:    January 27, 2023
20 FACTORY MUTUAL INSURANCE            Time:    10:00 a.m.
   COMPANY, and DOES 1-10, inclusive,  Crtrm.:  3
21
22              Defendants.

23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION..................................................................................................1

BACKGROUND..................................................................................................2

I.    The COVID-19 Pandemic and Plaintiffs' Insurance Policy ..................2

II.   The Motion to Dismiss and this Court's Order Denying It .......................4

LEGAL STANDARD ..........................................................................................5

ARGUMENT ......................................................................................................7

I.    Reconsideration Is Inappropriate Because Defendant Cannot Establish Clear Error or a Change In Controlling Law ....................................7

    A.   The *Out West* Decision Is Unpublished and Not Binding..............................7

    B.   No Other Cases That Defendant Cites Are Binding on This Court. .............8

    C.   This Court's Decision Does Not Conflict with the *Out West* Decision........................................................................................9

        1.    Plaintiffs' Policy Differs From the *Out West* Policy in Key Respects...................................................................9

            a.    Additional Coverages ..................................................9

            b.    Contamination Exclusion ..........................................12

        2.    The Court's Order Regarding Plaintiffs' Coverage Claims Under the Time Element and Civil Authority Order Provisions Does Not Conflict With *Out West*.................................14

            a.    The *Out West* Decision Does Not Address a General Time Element Coverage Claim For Losses Resulting From Physical Loss or Damage "Of The Type Insured."..............................................................14

            b.    This Court's Order Does Not Conflict With The Holding In *Out West* Regarding the Civil Authority Order Coverage. ..............................................15

        3.    *Out West* Does Not Answer the Question of How the Contamination Exclusion Operates Under Plaintiffs' Policy...........16

II.   Defendant's Motion for Reconsideration Should be Denied Because Defendant Failed to Timely Alert the Court of the *Out West* Decision. .................16

III.  Certification of an Interlocutory Appeal Is Inappropriate........................17

    A.   It Is Inefficient to Certify an Interlocutory Appeal Before the Factual

Coblentz Patch Duffy & Bass LLP<br>One Montgomery Street, Suite 3000, San Francisco, California 94104-5500<br>415.391.4800 · Fax 415.989.1663

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

Record Is Developed. ...................................................................................17

B.   A Substantial Ground for Difference of Opinion Does Not Exist
Regarding the Interpretation of Plaintiffs' Policy. .....................................18

C.   An Immediate Appeal Will Not Materially Advance the Ultimate
Termination of the Litigation. ....................................................................19

D.   The Proceedings Should Not Be Stayed. ....................................................19

CONCLUSION ............................................................................................................20

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Case No. 2:21-cv-00441-KJM-DB

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIU Ins. Co. v. Superior Ct.*,
  51 Cal. 3d 807 (1990) ................................................................................................. 7

*Amy's Kitchen, Inc. v. Fireman's Fund Ins. Co.*,
  83 Cal. App. 5th 1062 (2022) .................................................................................... 8

*Bank of the West v. Superior Court*,
  2 Cal. 4th 1254 (1992) ............................................................................................... 7

*In re Bofi Holding, Inc. Securities Litigation*,
  Case No.: 3:15-CV-02324-GPC-KSC, 2017 WL 3118769 (S.D. Cal. July 21, 2017) .......... 17

*Hanover Ins. Co. v. TLC Investing, LLC*,
  No. 2:11-CV-00711, 2011 WL 3841299 (D. Nev. Aug. 26, 2011) ........................... 8

*ICTSI Oregon, Inc. v. International Longshore and Warehouse Union*,
  22 F.4th 1125 (9th Cir. 2022) ...................................................................... 6, 7, 17, 20

*Kona Enterprises, Inc. v. Estate of Bishop*,
  229 F.3d 877 (9th Cir. 2000) ..................................................................................... 5

*Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company*,
  Case No. 2:21CV00862 (C.D. Cal. 2021) ........................................................... 18, 19

*Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company*,
  CV21-00862, ECF No. 15-3 (C.D. Cal. Apr. 2, 2021) ............................................ 19

*MacKinnon v. Truck Ins. Exch.*,
  31 Cal. 4th 635 (2003) ............................................................................................... 7

*In re Marriage of Cornejo*,
  13 Cal.4th 381 (1996) ........................................................................................... 10, 18

*McCurdy v. Kernan*,
  2021 WL 5822868 (E.D. Cal. Dec. 8, 2021) ............................................................. 6

*McDowell v. Calderon*,
  197 F.3d 1253 (9th Cir. 1999) ................................................................................... 6

*Morning Star Packing Company v. SK Foods, L.P.*,
  2017 WL 117891 (E.D. Cal. Jan. 11, 2017) .............................................................. 7

*Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*,
  No. CV 11-6521, 2013 WL 12306438 (C.D. Cal. July 11, 2013) ............................ 8

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Orlando Garcia v. Patel and Joshi Hospitality Corp.*,
 Case No. EDCV 20-2666 JGB, 2021 WL 3557813 (C.D. Cal. May 7, 2021) ....................... 17

*Out West Restaurant Group v. Affiliated FM Insurance Co*.,
 No. 21-15585, 2022 WL 4007998 (9th Cir. Sep. 2, 2022) ............................................... *passim*

*Pinney v. American Family Mutual Insurance Company*,
 Case No. C11-175 MJP, 2011 WL 13232602 (W.D. Wash. June 27, 2011) .......................... 6

*Reno v. W. Cab Co*.,
 No. 218CV00840, 2020 WL 2462900 (D. Nev. May 1, 2020) ................................................. 8

*Sikorski v. Paul Revere Life Insurance Company*,
 Case No. SA CV 15–1170–DOC, 2016 WL 7495805 (C.D. Cal. Mar. 22, 2016) ............... 19

*In re Tobacco Cases I*,
 186 Cal. App. 4th 42 (2010) ................................................................................................. 10

*United States v. Amsurg Corp.*,
 No. 2:12-cv-02218-TLN-CKD, 2016 WL 304567 (E.D. Cal. Jan. 26, 2016) ....................... 6

**Statutes & Rules**

28 U.S.C. § 1292(b) ...................................................................................... 6, 17, 20

Ninth Circuit Rule 36-3 ............................................................................................ 7

Ninth Circuit Rule 59(e) ....................................................................................... 5, 6

**Other Authorities**

Goelz, Batalden & Querio, *Rutter Group Prac. Guide: Federal Ninth Circuit Civil Appellate Practice* (2022) ............................................................................................................ 20

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

## INTRODUCTION

In its October 28, 2022 Order (the "Order," ECF No. 45), this Court considered Plaintiffs' factual allegations and the language and structure of the particular insurance policy they purchased from Defendant (the "Policy") and determined that Plaintiffs' interpretation of the Policy is a reasonable one.  The Court held that the Policy encompasses Plaintiffs' claims for coverage and denied Defendant's Motion to Dismiss.  Defendant now brings a Motion for Reconsideration of the Order (the "Motion").  Defendant's Motion should be denied because it is based almost entirely on an *unpublished* Ninth Circuit decision ("*Out West*") which interpreted a materially different insurance policy.

As this Court correctly held, Plaintiffs' "*[P]olicy appears to define the presence of a communicable disease as 'physical loss or damage.'*"  Order at 7 (emphasis added).  In reaching this conclusion, the Court relied on unique language in the Additional Coverages portion of the Policy (the "Additional Coverages Language").  The policy in *Out West* lacks this language. Plaintiffs' Policy therefore defines communicable disease as physical loss or damage while the *Out West* policy does not.  Given this essential difference, it is not surprising that this Court and the *Out West* court ruled differently.  The Additional Coverages Language in Plaintiffs' Policy—which defines communicable disease as physical loss or damage—impacts every other provision of the Policy relevant to the present dispute.  Defendant fails to grapple with the import of the Additional Coverages Language.

Defendant's contention that *Out West's* holding regarding the Contamination Exclusion demonstrates clear error also fails.  Given the Court's holding that a reasonable interpretation of the Policy is that it defines the presence of a communicable disease as "insured physical loss or damage" based on the Additional Coverages language, the Contamination Exception is inapplicable here. Plaintiffs' Policy states that the Contamination Exclusion does not apply: "This Policy excludes the following *unless directly resulting from other physical damage not excluded by this Policy*: . . ." Policy at 12 (emphasis added).  Under the Additional Coverages Language that is unique to this Policy, communicable disease is defined as physical damage that is covered and hence *not excluded*. Accordingly, in this case, the Court should not even reach the Contamination Exclusion at all.  This

is how the Court already ruled:

> The contamination exclusion does not bar coverage for "other physical damage not excluded by this Policy," including viral contamination.  Policy at 12, 62.  As explained above, it is reasonable to read the policy as defining the presence of a communicable disease" as non-excluded "physical damage," so this exclusion would be no bar to coverage.

Order at 8 (case citation omitted).  *Out West* did not consider, and could not have considered, how this language affected the application of the Contamination Exclusion in Plaintiffs' Policy because the *Out West* policy lacked both (1) the Additional Coverages Language and (2) equivalent language describing the exclusion category containing the Contamination Exclusion in Plaintiffs' Policy.  So while the language of the Contamination Exclusion itself is identical in both policies, the operation of the exclusion in the two policies is not identical due to other differences between the policies.

Defendant's request for interlocutory appeal should also be denied.  First, Defendant fails to identify any analogous cases decided under California law with the same policy language that create a conflict.  Second, granting interlocutory review here is reasonably likely to result in multiple appeals and further delay Defendant's performance of its Policy obligations.

## **BACKGROUND**

### I. **The COVID-19 Pandemic and Plaintiffs' Insurance Policy**

Plaintiffs operate and manage the Golden 1 Center, home of the Sacramento Kings, as well as a nearby hotel and outdoor shopping center.  *See* Compl.  ¶¶ 15–18, 24–27.  In early 2020, the rapid spread of SARS-CoV-2 and COVID-19 developed into a global pandemic.  *See id.* ¶¶ 40–48.  California and Sacramento County urged people to stay home, and every event at the Golden 1 Center was cancelled for the next year.  *See id.* ¶ 59.  Plaintiffs have suffered substantial losses of revenue, income, and profits.  *See id.* ¶¶ 7-9.

Before the pandemic, Plaintiffs purchased an insurance policy from Defendant.  *See id.* ¶ 28; Policy, Compl. Ex. A, ECF No. 1-1 (hereinafter "Policy").  The Policy is an "all risks" policy that covers "ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded."  Policy at 1.

///

///

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

The Policy's first section provides coverage for property loss or damage.  *See id.* at 7–32.  After listing various generic exclusions (including the Contamination Exclusion, discussed below), the Policy's first section for property loss or damage then adds "Additional Coverages."  It introduces these categories of "Additional Coverages" by stating that, "This Policy includes the following Additional Coverages *for insured physical loss or damage*."  Policy at 15, Subpart 6 (emphasis added) (hereinafter, referred to as the "Additional Coverages Language.")

One category of the additional coverages concerns "Communicable Disease Response":

> If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by: 1) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**, this Policy covers the reasonable and necessary costs incurred by the Insured at such **location** with the actual not suspected presence of **communicable disease** for the [cleanup, removal and disposal] of **communicable diseases** from insured property and [public relations and reputation management].

*Id.* at 20.[1]

The second section of the Policy includes general coverage for business losses arising from physical loss or damage of the type insured elsewhere in the policy, called "Time Element" coverage.  *See id.* at 33–53.  This portion of the Policy generally (but not exclusively) provides coverage for lost earnings or profits if the loss resulted "directly . . . from physical loss or damage *of the type insured* . . . to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES . . ."  *Id.* at 33 (emphasis added).  In addition to providing general time element coverage, the Policy provides specific coverage for actual loss sustained as a result of civil and military orders.  *Id.* at 45 (emphasis added).

The Policy identifies several categories of exclusions.  The final (and least restrictive) category of exclusions states, "This Policy excludes the following unless directly resulting from

---

[1] The boldface terms are defined elsewhere in the Policy.  A "communicable disease" is a "disease which is transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges."  Policy at 62.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

other physical loss or damage . . . " Policy at 12.  This category of exclusion includes a generic "contamination" exclusion:

> This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy: 1) contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured. . . .

Policy at 12.  A contaminant is defined as "anything that causes contamination," and contamination is "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew."  *Id.* at 62 (boldface omitted).

## II.    The Motion to Dismiss and this Court's Order Denying It

Plaintiffs gave notice to Defendant to recover the losses they sustained as a result of COVID-19 and the government shut-down orders.  Compl. ¶¶ 12, 66.  Defendant wrongfully denied the claim and Plaintiffs then filed a complaint in this Court.  *Id.* ¶ 13.  Defendant moved to dismiss the complaint, which the Court denied in its Order.  This Court recognized that, "[u]nder California law, if the language in an insurance policy is capable of more than one reasonable interpretation, as in this case, the ambiguity is resolved in favor of coverage."  Order at 7.  Given this well-settled rule of interpretation, the Court held that the presence of a communicable disease fits under the "physical loss or damage" umbrella for this specific Policy:

> No matter what might be possible to plead and prove about a different policy and viral pandemics in the abstract, the policy at the center of this case can reasonably be interpreted as defining the presence of a "communicable disease" as "physical loss or damage."  The policy's first sentence explains that it offers coverage only for risks of "physical loss or damage."  Policy at 1.  It later lists "Additional Coverages for insured physical loss or damage."  *Id.* at 15.  And among these additional coverages—by definition, all "for insured physical loss or damage"—the policy lists "the reasonable and necessary costs incurred" in response to government orders regulating the actual presence of a "communicable disease."  *Id.* at 20.  ***An insured could reasonably expect, given these terms, that the***

4

> *presence of a communicable disease such as COVID-19 fits under the "physical loss or damage" umbrella for the policy as a whole.*
>
> This reasoning extends equally to the plaintiffs' claims based on losses incurred as a result of civil and military orders. *See id.* at 45. That policy provision ties back to the same "physical damage of the type insured." *See id. An insured could reasonably expect the term "physical damage" to have the same meaning throughout the policy.*

*Id.* at 6 (emphasis added).

Thus, in interpreting the Contamination Exclusion, the Court found that it is reasonable for Plaintiff "to read the policy as defining the presence of a 'communicable disease' as non-excluded 'physical damage,' so this exclusion would be no bar to coverage."[2] *Id.* at 8. This would still allow "[l]osses caused by other contaminants listed in the Policy's definitions, those that are not 'communicable diseases,' [to] remain within the exclusion's scope." *Id.* at 8–9.

Defendant now incorrectly argues that this Court committed clear error in its decision, and is requesting this Court reconsider its ruling based on an unpublished, non-binding case that interprets a different insurance policy than the one at issue here.

## LEGAL STANDARDS

### I.   Motion for Reconsideration

Under Rule 59(e), reconsideration is rarely warranted. "[T]he rule offers an 'extraordinary remedy . . .'" and so "'a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'" *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citing *389 Orange St. Partners v. Arnold*, 179

---

[2] That a communicable disease or something like it could qualify as "physical loss or damage" is not an unreasonable or interpretation—it is precisely the interpretation that Defendant itself advanced before the pandemic. Defendant, represented by the some of the same counsel that represents it here, has previously argued to a federal court that the phrase "physical loss or damage" was "ambiguous" and "must be construed against [the insurer]," and that there was "no legal basis to require FM Global to prove demonstrable structural damage" in order to obtain coverage for mold infestation. Plts.' RJN Ex. A at 3 n.1, 6, ECF No. 15.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR
CERTIFICATION OF AN INTERLOCUTORY APPEAL**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

F.3d 656, 665 (9th Cir. 1999)).  The policy behind the rule is self-evident: unless the standard for granting a motion for reconsideration is narrowly limited, any party wanting to reargue a loss could move for reconsideration.

"[A] mere 'attempt to reargue the case is not grounds for granting a motion for reconsideration.'"  *United States v. Amsurg Corp.*, No. 2:12-cv-02218-TLN-CKD, 2016 WL 304567, at *3 (E.D. Cal. Jan. 26, 2016).  Therefore, a reconsideration motion is "not a vehicle for . . . presenting the case under new theories, securing a rehearing on the meritsor otherwise taking a 'second bite at the apple' . . . a party is [also] barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so."  *McCurdy v. Kernan*, 2021 WL 5822868, at *1 (E.D. Cal. Dec. 8, 2021) (internal citations omitted).

In reviewing a ruling for clear error under Rule 59(e), the Court asks only whether the order being reconsidered "involved a clear error of law."  *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999).  A clear error of law involves a decision that "fall[s] clearly outside the bounds of [the Court's] authority."  *Id.* at 1256.  Reliance on newly cited, non-binding authority is insufficient to show the clear error required for reconsideration.  *See Pinney v. American Family Mutual Insurance Company*, C11-175 MJP, 2011 WL 13232602, at *2 (W.D. Wash. June 27, 2011) ("Plaintiffs' reliance on a non-binding district court case hardly shows the clear error necessary for reconsideration.").

## II.    <u>Certification for Appeal Under 28 U.S.C. § 1292(b)</u>

"Under 28 U.S.C. § 1292(b) parties may take an interlocutory appeal only when 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'"  *ICTSI Oregon, Inc. v. International Longshore and Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).  To grant a request for interlocutory appeal, "[A court] must determine that the order meets the three certification requirements outlined in § 1292(b): '(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion [as to that question], and (3) that an immediate [resolution of that question] may materially advance the ultimate

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1  termination of the litigation.'"  *Id.* (citing *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d

2  1020, 1026 (9th Cir. 1981)).

**III.     Contract Interpretation**

4      Under California law, which governs the interpretation of the Policy, the Court interprets the

5  policy's language "in context, with regard to its intended function."  *Bank of the West v. Superior*

6  *Court*, 2 Cal. 4th 1254, 1256 (1992).  "If contractual language is clear and explicit, it governs."  *Id.*

7  at 1264.  But if language is capable of two or more reasonable interpretations, the resulting

8  ambiguity is resolved in favor of coverage to protect the "objectively reasonable expectations of the

9  insured."  *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 822 (1990).  Moreover, coverage clauses are

10  interpreted broadly "so as to afford the greatest possible protection of the insured, [whereas]…

11  exclusionary clauses are interpreted narrowly against the insurer."  *MacKinnon v. Truck Ins. Exch.*,

12  31 Cal. 4th 635, 648 (2003) (alterations omitted) (quoting *White v. W. Title Ins. Co.*, 40 Cal. 3d 870,

13  881 (1985)).

14                                 **ARGUMENT**

15  **I.     Reconsideration Is Inappropriate Because Defendant Cannot Establish Clear Error or**
         **a Change In Controlling Law.**

16

17      **A.     The *Out West* Decision Is Unpublished, Not Binding, and Not On Point.**

18      Defendant's entire argument in favor of reconsideration focuses on the ***unpublished*** Ninth

19  Circuit decision *Out West Restaurant Group v. Affiliated FM Insurance Co*., No. 21-15585, 2022

20  WL 4007998 (9th Cir. Sep. 2, 2022) (hereinafter "*Out West*").  *Out West* cannot support a finding

21  of clear error or a change in controlling law because it is unpublished and accordingly "is not

22  binding" and does not have precedential value.  *See Morning Star Packing Company v. SK Foods,*

23  *L.P.*, 2017 WL 117891 at *5 n. 4 (E.D. Cal. Jan. 11, 2017).  Unpublished Ninth Circuit opinions,

24  under Ninth Circuit Rule 36-3, have "'only persuasive rather than authoritative or precedential

25  value,'" which weighs against granting a motion for reconsideration.  *Id.*  (citing *Johnson v. Nevada*

26  *ex rel. Bd. of Prison Comm'rs*, No. 11–00487, 2013 WL 5428423, at *7 (D. Nev. Sept. 26, 2013)).

27  As discussed below, this Court's Order does not conflict with *Out West*; the policy language in *Out*

28  *West* is not the same as Plaintiffs' Policy; and the facts pleaded in *Out West* are not the same as

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR
CERTIFICATION OF AN INTERLOCUTORY APPEAL**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1   Plaintiffs' factual allegations.

2       **B.      No Other Cases That Defendant Cites Are Binding on This Court.**

3           Like *Out West*, no other case that Defendant cites as supporting "contrary" findings are

4   binding.  Mot at 13-16.  None of the cited cases are appellate authority from the Ninth Circuit or

5   California appellate courts.[3]  This also weighs against granting the motion for reconsideration.  *See*

6   *Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*, No. CV 11-6521, 2013 WL 12306438, at

7   *4 (C.D. Cal. July 11, 2013).

8           Further, interpreting an insurance policy based purely on non-binding caselaw goes against

9   California law.  An insurance policy, under California law, "must be construed in light of how a

10  reasonable layperson would read its language, not how insurance-coverage lawyers might

11  understand terms of art defined not by the policy but by caselaw."  *Amy's Kitchen, Inc. v. Fireman's*

12  *Fund Ins. Co.*, 83 Cal. App. 5th 1062, 1070 (2022).  This Court has already carefully evaluated the

13  language of this differently worded Policy.  It should not reconsider its decision based on non-

14  binding rulings of other courts interpreting policies subject to the laws of different states, with

15  different factual allegations, and subject to different legal arguments.  *See Hanover Ins. Co. v. TLC*

16  *Investing, LLC*, No. 2:11-CV-00711, 2011 WL 3841299, at *1 (D. Nev. Aug. 26, 2011) (finding

17  that none of the cases cited by party requesting reconsideration are "binding upon this court" and so

18  party failed to "present[] new evidence, argue[] that this court committed a clear error or was

19  manifestly unjust, or establish[] an intervening change in controlling law."); *Reno v. W. Cab Co.*,

20  No. 218CV00840, 2020 WL 2462900, at *4 (D. Nev. May 1, 2020) ("The existence of persuasive

21  authority reaching a contrary result does not establish clear error as necessary to justify

22  reconsideration.").

23  ///

24  ///

25  ///

26

27  _____

[3] Additionally, and as discussed *infra* at 18, none of the other cases Defendant cites are directly on

28  point.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR
CERTIFICATION OF AN INTERLOCUTORY APPEAL**

C.      **This Court's Decision Does Not Conflict with the _Out West_ Decision.**

Defendant's Motion for Reconsideration relies almost entirely on _Out West_.  In that case, the insured restaurant group sought coverage under a materially different (albeit similar) _Affiliated_ Factory Mutual policy.[4]   The _Out West_ insured sought coverage for losses arising from business interruptions caused by the presence of the COVID-19 virus at its restaurants and COVID-related government closure orders.  _Out West_, 2022 WL 4007998, at *1.  The district court dismissed the complaint and plaintiff appealed the final judgment (not an interlocutory order).  _Id._  In an unpublished decision, _Out West_ affirmed the dismissal holding that the presence of the COVID-19 virus on the property did not constitute "direct" physical loss or damage and that, in any event, the Contamination Exclusion precluded coverage under the "direct" physical loss or damage provisions.[5]  Because of material differences in the respective policies and claims for coverage, there is no meaningful conflict between _Out West_ and this Court's decision.

1.      **Plaintiffs' Policy Differs From the _Out West_ Policy in Key Respects.**

Defendant does not establish any actual conflict between the _Out West_ decision and this Court's Order.  This Court's Order correctly answered the question of whether Plaintiffs put forth a reasonable interpretation of _Plaintiffs' Policy_.  The _Out West_ decision has no bearing on this issue because the _Out West_ policy differs from Plaintiffs' Policy in two key respects.

a.      **The Additional Coverages Language**

Plaintiffs' Policy includes an "Additional Coverages" coverage section that covers, among other items, "Communicable Disease Response."  Policy at 15, 20.  Plaintiffs' Policy—unlike the _Out West_ Policy—specifically describes all of those "Additional Coverages," including the additional coverage for "Communicable Disease Response," as coverage "for insured physical loss or damage."  _Id._ at 20.  In contrast, as demonstrated in the chart below, the _Out West_ Policy does

---

[4] The _Out West_ policy is attached as Exhibit A to the Declaration of Howard Slavitt ("Slavitt Decl.").  Pincites to the _Out West_ policy in this brief are to the page numbers contained in the _Out West_ policy.

[5] The _Out West_ decision appears to use "_direct_ physical loss or damage" to refer to the property damage provisions of the policy rather than the time element or business loss provisions.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1    not.

2

| Plaintiffs' Policy | *Out West* Policy |
|---|---|
| 6. ADDITIONAL COVERAGES<br>This Policy includes the following Additional Coverages *for insured physical loss or damage*. (Emphasis added)<br><br>These Additional Coverages: . . . (3) are subject to the Policy provisions, including applicable [limits of liability,] exclusions and deductibles, all as shown in this section and elsewhere in this Policy.<br><br>. . .<br><br>F. COMMUNICABLE DISEASE RESPONSE<br>If a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by:<br>1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; . . . | D. ADDITIONAL COVERAGES<br>The Additional Coverages below are subject to all the terms and conditions of this Policy including, but not limited to, the limits of liability, deductibles and exclusions shown in the Declarations section.<br><br>. . .<br><br>5. Communicable Disease – Property Damage[6]<br>If a described location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such described location is limited, restricted or prohibited by:<br>a) An order of an authorized governmental agency regulating or as result of such presence of communicable disease; . . . |
| Policy at 15, 20. | Slavitt Decl., Ex. A at 5, 7. |

17       This Court's Order correctly relied on this language (the "Additional Coverages Language")

18 to distinguish Plaintiffs' Policy from other policies—like the *Out West* policy—that do not define

19

20    ---

[6] The words in the *Out West* title of its Communicable Disease provision, "Property Damage," are not the same as the lead in phrase defining the Additional Coverage in Plaintiffs' Policy. Slavitt Decl., Ex. A at 7. First, they are not part of a declarative sentence. Second, "property damage" does not communicate whether it is *physical* property damage that the policy is referring to. "Property Damage" also does not include the word "insured," like the phrase in Plaintiff's policy "for *insured* physical *loss or* damage." Loss is also a separate word with a different (broader) meaning from "damage." *See In re Tobacco Cases I*, 186 Cal. App. 4th 42, 49 (2010) (Courts "must give significance to every word of a contract, when possible and avoid an interpretation that renders a word surplusage."). "Property damage" and "for insured physical loss or damage" are significantly different phrases with different meanings in the two policies. Moreover, the *Out West* court did not address the words "property damage" appearing in the title to the provision in its unpublished decision. *See In re Marriage of Cornejo*, 13 Cal.4th 381, 388 (1996) ("It is axiomatic that cases are not authority for propositions not considered.")

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

communicable disease as physical loss or damage.  *See* Order at 7 ("Other decisions Factory Mutual cites do not confront the ambiguity discussed above, wherein the policy appears to define the presence of a communicable disease as "physical loss or damage.").  Based on this specific language, this Court reasonably held that Plaintiffs' had pled a "reasonable interpretation" of *their* Policy.

While Defendant superficially acknowledges this difference in policy language, it does not grapple with its import.  Rather, Defendant argues, "The only distinction is that the policy in *Out West* does not similarly *reiterate* that it provides coverage for 'physical loss or damage' in the opening language to its 'Additional Coverages.'  Mere 'repetition' of this same concept cannot reasonably make a dispositive difference in construing the two policies."  Mot. at 3 (emphasis in original).  Defendant's argument misses the mark.

First, the opening language for additional coverages in Plaintiffs' Policy does not—as Defendant contends—merely "reiterate" that the Policy *generally* covers physical loss or damage. It is important language that is used to introduce and define the entire "Additional Coverages" section of the Policy.  It states "[t]his Policy includes the following Additional Coverages for insured physical loss or damage."  Policy at 15.  This language can reasonably be interpreted as "defining the presence of a 'communicable disease' as 'physical loss or damage.'"  Order at 6.  In other words, the Court reasonably interpreted this key opening language for the Additional Coverages section to define the coverages described in that section, including for communicable diseases, as constituting physical loss or damage.

Second, Defendant's argument is directly contrary to California law on contract interpretation.  As Defendant itself asserted in its Motion, "Courts 'must give significance to every word of a contract, when possible and avoid an interpretation that renders a word surplusage.'"  Mot. at 12 (citing *In re Tobacco Cases I*, 186 Cal. App. 4th 42, 49 (2010)).  Here, Defendant asks the Court to simply ignore the Additional Coverages Language.  The Court correctly declined Defendant's invitation to disregard this material policy language.

Put simply, the Additional Coverages Language, which is absent from the *Out West* policy, informs how all other provisions in the Policy should be interpreted.  Once the Court found that the

Case No. 2:21-cv-00441-KJM-DB

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  presence of a communicable disease is reasonably understood to be defined as an insured physical

2  loss or damage, it correctly interpreted provisions in Plaintiffs' Policy—even those identical to the

3  *Out West* policy—differently from how the court in *Out West* interpreted those provisions.

4          **b.**     **Contamination Exclusion**

5        Both Plaintiffs' Policy and the *Out West* Policy contain a Contamination Exclusion.  While

6  the language *within* the specific Contamination Exclusions in the two policies is identical, the

7  language describing those exclusions differs in ways that necessitate different results:

| Plaintiffs' Policy | *Out West* Policy |
|---|---|
| This Policy excludes the following **unless directly resulting from other physical damage not excluded by this Policy [emphasis added]**:<br><br>1) contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured.<br><br>Policy at 12. | **GROUP III:** This Policy excludes…<br><br>Contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured.<br><br>Slavitt Decl., Ex. A at 4-5. |

19        In the *Out West* policy, the exclusions are separated into three categories with the

20  Contamination Exclusion in the most restrictive ("GROUP III: This Policy Excludes…").  Slavitt

21  Decl., Ex. A at 4-5.  In contrast, in Plaintiffs' Policy, the exclusions are separated into four

22  categories and the Contamination Exclusion is in the fourth and least-restrictive category.  Policy

23  at 9-12.  The fourth category of exclusion in Plaintiffs' Policy states, "This Policy excludes the

24  following unless directly resulting from other physical damage not excluded by this Policy."

25  Policy at 12.  This Court's Order correctly seized on that critical difference and held that it is

26  reasonable for Plaintiff "to read the policy as defining the presence of a 'communicable disease' as

27  non-excluded 'physical damage,' so this exclusion would be no bar to coverage."  Order at 8.

28        Moreover, both policies have the same language introducing all of their exclusions, "In

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR
CERTIFICATION OF AN INTERLOCUTORY APPEAL**

1    addition to the exclusions elsewhere in this Policy, the following exclusions apply *unless*

2    *otherwise stated . . .*"  Policy at 9 (emphasis added).  Given the import of the Additional

3    Coverages Language, Plaintiffs' Policy—unlike the *Out West* policy—*does* otherwise state that

4    communicable diseases are an insured physical damage or loss., and therefore the exclusions do

5    not apply.  Similarly, the language describing the fourth category of exclusions in Plaintiffs'

6    Policy (and that is not in the *Out West* policy) also means that the Contamination Exclusion is

7    inapplicable.  The Additional Coverages Language means that losses resulting from physical

8    damage from "communicable diseases" are directly resulting from "other physical damage not

9    excluded by this Policy."  *See* Policy at 12, 15.  This additional language is not merely reiterating

10   the internal exception contained within both policies' Contamination Exclusions; it provides

11   Plaintiffs with an additional, broader exception to the Contamination Exclusion.[7]

12          Because the *Out West* court did not consider a policy that defined communicable diseases

13   to be "insured physical damage or loss," it did not consider (1) the language introducing all of the

14   policy exclusions that provides that the exclusions apply "unless otherwise stated" or (2) the

15   Policy language stating that the Contamination Exclusion does not apply if "directly resulting

16   from other physical damage not excluded by this Policy."  Policy at 12.  Certainly a reasonable

17   interpretation is the one provided in this Court's Order, that given the Additional Coverages

18   language the Contamination Exclusion does not apply.  Order at 8.  Defendant's Motion does not

19   address this important difference.  Defendant argues that the Contamination Exclusions are

20   identical, choosing to ignore (1) the different operation of the exceptions to the exclusions given

21   the Additional Coverages Language, (2) the language introducing all of the exclusions, and (3) the

22   language stating when the least-restrictive category of exclusions in Plaintiffs' Policy apply.[8]

23

24   [7] The broader exceptions to all exclusions and the Policy language describing the least restrictive
     category of exclusions are different than the internal exception because they do not contain the
25   clause "then only physical damage caused by such contamination may be insured."  Thus, once the
     Court determines that communicable diseases are an insured physical damage or loss, the
26   Contamination Exclusion does not apply at all to communicable diseases under Plaintiffs' Policy,
27   although it continues to apply to other types of contamination.

28   [8] Defendant relies heavily on an ambiguous sentence from the *Out West* decision and argues that it

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR
CERTIFICATION OF AN INTERLOCUTORY APPEAL**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

2.   **The Court's Order Regarding Plaintiffs' Coverage Claims Under the Time Element and Civil Authority Order Provisions Does Not Conflict With *Out West*.**

Plaintiffs' principal claim is for Time Element coverage (a) under the gross earnings or gross profit provisions for general Time Element coverage, and (b) in the alternative, under the Civil Authority Order provision. As discussed below, this Court's Order regarding the Time Element coverage does not conflict with *Out West*, and Defendant has not sought reconsideration of the Court's Order concerning the Civil Authority provision.

a.   **The *Out West* Decision Does Not Address a General Time Element Coverage Claim For Losses Resulting From Physical Loss or Damage "Of The Type Insured."**

The *Out West* decision has no bearing on Plaintiffs' claim for coverage under the general Time Element provision of their Policy. Plaintiffs' Policy insures against TIME ELEMENT loss "directly resulting from physical loss or damage *of the type insured*." Compl. ¶ 67; Policy at 8, 40 (emphasis added). This Court ruled in its Order based on the wording and structure of this particular policy, "that the presence of a communicable disease such as COVID-19 fits under the "physical loss or damage" umbrella for the policy as a whole" including under the Time Element provisions. Order at 6, 20.

Plaintiffs' Policy insures against TIME ELEMENT loss "directly resulting from physical loss or damage *of the type insured*." Policy at 33. *Out West* did not consider this "of the type insured" language in its order. This Court found in the Order that communicable disease is defined as a physical loss or damage and, as the Court found, is *actually insured*. However, even if—as Defendant contends—the Contamination Exclusion limits coverage for communicable disease to

---

means that the *Out West* court held that "even assuming viral contamination could otherwise cause 'physical loss or damage," the Contamination Exclusion would bar coverage. *See* Mot. at 1-2, 6. The referenced sentence from the *Out West* decision is ambiguous at best. *Out West* nowhere considered how the Contamination Exclusion would apply to a policy, like Plaintiffs' Policy, that can reasonably be interpreted to define "communicable diseases" as "insured physical damages or loss." Because the *Out West* Court did not consider the Additional Coverages Language, it nowhere considered how the exceptions to the exclusions affect the application of the Contamination Exclusion in these circumstances. Moreover, as discussed *infra* at 14-15, *Out West* did not consider the application of the Contamination Exclusion to Time Element coverage for physical loss or damage "of the type insured."

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

only the "Communicable Disease Response" coverage specified in the Policy, this would not preclude coverage under the Time Element provisions of the policy.  Pursuant to Defendant's argument, although Plaintiffs' would not have broad communicable disease coverage under the All Risks portion of the Policy, they would still have *some* coverage for communicable disease under the Additional Coverages.  In other words, communicable diseases would remain *a type* of physical loss or damage for which insurance is provided.  As such, it is reasonable to interpret the Policy as including communicable disease as a physical loss or damage *of the type insured.*  Regardless of how the Contamination Exclusion may generally limit coverage relating to communicable disease under the All Risks portion of the policy, communicable disease still constitutes physical loss or damage "of the type insured" under the Time Element portions of Plaintiffs' Policy.

> **b.    Defendant Is Not Seeking Reconsideration of This Court's Order Concerning Civil Authority Order Coverage.**

Defendant's Motion does not say a word about the Court's Order denying its underlying motion as to the Civil Authority Order coverage.  Defendant accordingly provides no basis for reconsideration of that portion of the Order.

In any event, although the *Out West* decision denied coverage to the insured under the Civil Authority Order provision, that holding involved a different policy and different factual allegations. The Court in *Out West* held that the COVID shutdown orders were "not based on direct physical loss of or damage to property" and were instead "issued in an effort halt the spread of COVID-19." *Out West,* 2022 WL 4007998, at *1.  In the present case, however, Plaintiffs' Policy defines communicable disease (such as COVID-19) as "physical loss or damage."  Accordingly, a governmental shutdown order meant to stop the spread of COVID-19 is necessarily "the direct result of physical damage *of the type insured*" under Plaintiffs' Policy.  Additionally, the *Out West* decision explicitly does not address how the Contamination Exclusion affects the Civil Authority Order coverage, or general Time Element coverage.  *See Out West* at 1, fn.1 ("Because coverage is thus not available under the Civil or Military Authority provision, we need not resolve the parties' dispute as to whether the contamination exclusion applies to that coverage.").

### 3. *Out West* Does Not Address How the Contamination Exclusion Operates Under Plaintiffs' Policy.

Defendant's primary argument is that because the Contamination Exclusions in the *Out West* policy and Plaintiffs' Policy are the "same," the court in *Out West* necessarily decided the issue of how to interpret the Contamination Exclusion under *Plaintiffs'* Policy.  Mot. at 9-12.  As discussed above, regardless of the language *within* the Contamination Exclusions, the Additional Coverages Language combined with the exceptions to the exclusions in Plaintiffs' Policy mean that the Court should never reach the Contamination Exclusion for Plaintiffs' claims.

The internal exception within the Contamination Exclusion provides that: "If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, *then only physical damage caused by such contamination may be insured.*"  Policy at 12.  Neither *Out West* nor Defendant's Motion explains how this internal exception applies under Plaintiffs' Policy where communicable diseases are defined as "insured physical loss or damage."  Indeed, the result is necessarily different here.  Because the presence of a communicable disease constitutes "insured physical loss or damage" under Plaintiffs' Policy (and hence not is excluded from coverage), any contamination caused by the presence of that communicable disease likewise is not excluded.

The *Out West* decision held that the Contamination Exclusion barred coverage under the insured's policy in that case.  It does not address how the Contamination Exclusion operates under Plaintiffs' materially different Policy where (1) communicable diseases are defined as "insured physical loss or damage" and (2) the exceptions describing the exclusions mean that the exclusions cannot and do not apply at all to an "insured physical loss or damage."

## II. **Defendant's Motion for Reconsideration Should be Denied Because Defendant Failed to Timely Alert the Court of the *Out West* Decision Before the Court Issued the Order.**

This Court should also decline to reconsider its Order in light of Defendant's belated disclosure of *Out West*.  *Out West* was filed on September 2, 2022, *eight weeks* before the Court filed its Order on October 28, 2022.  A Court may decline to reconsider an order based on a party's untimely disclosure of a non-binding authority.  *See Orlando Garcia v. Patel and Joshi Hospitality*

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1    *Corp.*, Case No. EDCV 20-2666 JGB, 2021 WL 3557813, at *3 (C.D. Cal. May 7, 2021) ("[T]he

2    Motion merely presents non-binding authorities Defendant could have (and should have) presented

3    in support of its Motion to Dismiss, while rehashing the same arguments the Court already

4    considered and rejected."); *In re Bofi Holding, Inc. Securities Litigation,* Case No.: 3:15-CV-02324-

5    GPC-KSC, 2017 WL 3118769, at *5 (S.D. Cal. July 21, 2017) ("Accordingly, Lead Plaintiff does

6    not stand on solid ground when it asserts that the magistrate judge committed legal error by declining

7    to follow non-binding precedent in this circuit").

8          Despite these eight intervening weeks, and Defendant's prior submittals of five supplemental

9    authorities to this Court in four separate, post-hearing filings, Defendant waited to raise *Out West*

10   until after this Court issued its decision.  *See* ECF Nos. 22, 26, 31, 42.  Defendant does not offer any

11   excuses or justification for its delay.

12   **III.    Certification of an Interlocutory Appeal Is Inappropriate**

13         Defendant fails to articulate any "exceptional circumstances" justifying interlocutory review

14   under Section 1292(b).  *ICTSI Oregon, Inc. v. International Longshore and Warehouse Union*, 22

15   F.4th 1125, 1130 (9th Cir. 2022).  Specifically, Defendant does not establish (1) a substantial

16   grounds for difference of opinion or (2) that an immediate appeal will materially advance the

17   ultimate termination of the litigation.  Further, it is inefficient to certify an interlocutory appeal

18   before the factual record is fully developed.

19         **A.    It Is Inefficient to Certify an Interlocutory Appeal Before the Factual Record Is**
           **Developed.**

20

21         As this Court recognized in its Order, the Policy provides coverage because, at a minimum,

22   its language and structure can reasonably be understood and interpreted as Plaintiffs' contend.  Order

23   at 7 ("Under California law, if the language in an insurance policy is capable of more than one

24   reasonable interpretation, as in this case, the ambiguity is resolved in favor of coverage.").  To most

25   efficiently allow for any eventual appeal, this Court should decline to certify an immediate

26   interlocutory appeal in favor of developing the factual record.  Plaintiffs expect that the factual

27   record will corroborate the Court's reasonable interpretation of the Policy.  For example, in a similar

28   claim, the plaintiffs in *Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company,* Case

17

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR
CERTIFICATION OF AN INTERLOCUTORY APPEAL**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

No. 2:21CV00862 (C.D. Cal. 2021), uncovered evidence that Defendant Factory Mutual had intended to cover the presence of communicable disease as physical damage or loss under various of its policy forms, and that Defendant is now trying to effectively rewrite its policy obligations post-pandemic to avoid a massive policyholder liability.  *See* Slavitt Decl., Exs. D-F.[9]

## B.   A Substantial Ground for Difference of Opinion Does Not Exist Regarding the Interpretation of Plaintiffs' Policy.

Defendant has failed to show substantial grounds for difference of opinion regarding Plaintiffs' Policy under California law.  As discussed above, Defendant's attempt to establish any meaningful conflict between the *Out West* decision and this Court's Order fails.   Similarly, Defendant does not direct the Court to any case under California law in which a court interpreted *Plaintiffs*' Policy language differently when presented with the same arguments.  *See In re Marriage of Cornejo,* 13 Cal.4th 381, 388 (1996) ("It is axiomatic that cases are not authority for propositions not considered.").   Defendant identifies several cases applying the law of other states, but Defendant's motion does not specifically identify a single case in which (1) the insured's policy included the same Additional Coverages Language stating that communicable diseases are an "insured physical loss or damage"; (2) the insured argued that such Additional Coverages Language defined communicable disease as "physical loss or damage"; (3) the policy contained the same exceptions to the Contamination Exclusion; (4)  the insured was seeking general time element coverage as well as civil authority order coverage; and (5) California law applied.  *See* Mot. at 13-16.   Because Plaintiffs' interpretation of the Policy is reasonable, this Court found that "it is unnecessary to decide whether the presence of a virus might be 'physical loss or damage' ***in the abstract or under a different policy*** with different terms."  Order at 8 (emphasis added).  This Court also recognized that under California law the reasonableness of Defendant's own interpretation was not a relevant question in this instance, as "[w]hen both the insured and insurer propose reasonable interpretations, a court must resolve the ambiguity in the insured's favor."  *Id*. at 9.

---

[9] Exhibits D-F are being submitted only for the limited purpose of opposing the request to certify an interlocutory appeal, as examples of the type of evidence that Plaintiffs expect will reasonably be developed in discovery.

Moreover, Defendant's Motion omits any mention of a recent case under California law finding that the insured had stated claims for coverage under a policy nearly identical to Plaintiffs. In *Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company,* the court denied FM's motion for judgment on the pleadings relating to the insured's COVID-related claim for time element and civil authority order coverage. *Live Nation*, CV21-00862, ECF No. 42, (C.D. Cal. Feb. 3, 2022) (hereinafter the "*Live Nation* Order").[10]  The insured's policy in that case included (1) the same introductory Additional Coverages Language and (2) the same exceptions to the Contamination Exclusion as Plaintiffs' Policy.  Slavitt Decl., Ex. B at 16, 18.  The *Live Nation* case severely undercuts Defendant's contention that this Court's Order is an "outlier."

### C.   An Immediate Appeal Will Not Materially Advance the Ultimate Termination of the Litigation.

An immediate appeal will not materially advance the ultimate termination of this litigation. Instead, granting this interlocutory certification is reasonably likely to result in multiple appeals, *e.g.*, if the Ninth Circuit affirms this Court's Order and then (a) Plaintiffs win at trial or (b) Plaintiffs were to lose at the summary judgement stage.  Setting up a likelihood of multiple appeals is contrary to the efficient administration of justice.  *See, e.g., Sikorski v. Paul Revere Life Insurance Company*, Case No. SA CV 15–1170–DOC, 2016 WL 7495805, at *2 (C.D. Cal. Mar. 22, 2016) (where "an immediate appeal would create the possibility of multiple appeals . . . the Court does not see obvious efficiency gains to allowing Plaintiff to immediately appeal").

### D.   The Proceedings Should Not Be Stayed.

It has been nearly three years since Plaintiffs first began to suffer significant damages due

---

[10] The Live Nation Order is attached as Exhibit C to the Slavitt Declaration.  The insured in *Live Nation*—like Plaintiffs here—argued that the inclusion of communicable disease coverage in the Additional Coverages section of the policy indicated that communicable disease constituted physical loss or damage.  In denying FM's motion, the Court held that the insured had pled physical loss or damage.  *Live Nation* Order at 8 ("[I]t cannot be determined as a matter of law that the presence of COVID-19 in Plaintiff's properties could not cause "physical loss or damage" to property.").  It also rejected Defendants contention that the Contamination Exclusion barred coverage as a matter of law.  *Id.* at 9 ("[O]n its face, the Contamination Exclusion does not exclude physical damage caused by COVID-19.").

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

19

Case No. 2:21-cv-00441-KJM-DB

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

1   to the COVID-19 pandemic and two years since Plaintiffs filed their complaint.  Allowing any

2   additional time to pass without allowing parties to engage in discovery would unnecessarily delay

3   Plaintiffs from achieving their long awaited resolution to this dispute and the remedy they deserve.

4          If this Court were to grant Defendant's Section 1292(b) certification request, it should not

5   stay the proceedings while the Ninth Circuit decides whether to entertain the appeal.  The time from

6   application for an interlocutory appeal to just that initial decision is between eight and twelve weeks.

7   *See* Goelz, Batalden & Querio, *Rutter Group Prac. Guide: Federal Ninth Circuit Civil Appellate*

8   *Practice*, ¶ 6:616 (2022).  The Ninth Circuit will only exercise jurisdiction over an order certified

9   for interlocutory review in the rare case where "exceptional circumstances justify a departure from

10  the basic policy of postponing appellate review until after the entry of a final judgment."  *ICTSI*

11  *Oregon*, at 1130.  Further, Section 1292(b) explicitly provides that there is *not* an automatic stay

12  during this application process.  Given the rarity with which the Ninth Circuit chooses to entertain

13  such appeals, this Court should decline Defendant's request to stay the proceedings, at a minimum

14  until the Ninth Circuit makes its initial decision.  The parties can use this time valuably to engage

15  in discovery and move the matter to speedier resolution.  If the Ninth Circuit were to decide to hear

16  an appeal of an order certified for interlocutory review, the parties and Court can consider whether

17  a stay is appropriate based on the circumstances at that time.

18                                        **CONCLUSION**

19         For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendant's

20  Motion for Reconsideration or for Certification of an Interlocutory Appeal in its entirety.

21  DATED:  December 21, 2022              COBLENTZ PATCH DUFFY & BASS LLP

22

23                                 By:    _____

24                                        BENJAMIN C. PULLIAM
                                          Attorneys for Plaintiffs
25                                        SACRAMENTO DOWNTOWN ARENA LLC;
                                          SACRAMENTO KINGS LIMITED
26                                        PARTNERSHIP; SAC MUB1 HOTEL, LLC;
                                          and SGD RETAIL LLC
27

28

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

20                                      Case No. 2:21-cv-00441-KJM-DB

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR FOR
CERTIFICATION OF AN INTERLOCUTORY APPEAL**