1
2
3
4
5
6
7
8             UNITED STATES DISTRICT COURT
9         FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11  Sacramento Downtown Arena LLC;              No. 2:21-cv-00441-KJM-SCR
    Sacramento Kings Limited Partnership; Sac
12  Mubi Hotel, LLC; and SGD Retail LLC,        ORDER

13                    Plaintiffs,

14          v.

15  Factory Mutual Insurance Company, and Does
16  1-10, inclusive,

17                    Defendants.

18

19          Plaintiffs filed this insurance coverage action alleging defendants improperly denied their

20  insurance claims related to losses they incurred as a result of the COVID-19 pandemic.  The

21  parties each now move for summary judgment.  Having carefully considered the record and the

22  applicable law, for the reasons set forth below, the court **grants** defendants' motion for summary

23  judgment and **denies** plaintiff's motion as moot.

24  **I.      PROCEDURAL BACKGROUND**

25          Factory Mutual argues summary judgment should be granted in its favor, because

26  (1) plaintiffs cannot show "physical loss or damage" to property within the meaning of the Policy;

27  (2) the contamination exclusion precludes coverage; and (3) plaintiffs have not established a

28  viable claim for civil or military authority coverage.  *See generally* Def.'s Mot., ECF No. 101;

                                    1

1    Def.'s Mem., ECF No. 102.  Plaintiffs disagree and seek partial summary judgment in the form of

2    an order finding: (1) COVID-19 was actually present in the Arena and Hotel on March 11, 2021;

3    (2) plaintiffs are entitled to general Time Element coverage; (3) during the relevant time period,

4    COVID-19 was present in other properties within five miles of the Arena and Hotel; (4) plaintiffs

5    are entitled to civil authority coverage; and (5) plaintiffs' claims are not subject to a $1,000,000

6    annual aggregate sublimit.  *See* Pls.' Mem. at 25,[1] ECF No. 106.  Both motions are fully briefed.

7    *See* Pls.' Opp'n, ECF No. 129; Def.'s Opp'n, ECF No. 125; Pls.' Reply, ECF No. 136; Def.'s

8    Reply, ECF No. 133.  On September 13, 2024, the court heard arguments on the cross-motions.

9    *See* Hr'g Mins., ECF No. 140.  Fredrick C. Crombie and Mark Hejinian appeared for plaintiffs

10   and Laura Lin, Bryce Friedman and Sarah Forbes appeared for Factory Mutual.[2]

11   **II.    DEFENDANT'S OBJECTIONS**

12          To clarify the record on summary judgment, the court first rules on Factory Mutual's

13   objections to the declaration of Dr. Olivia Kasirye, which plaintiffs submitted in support of their

14   motion.  *See generally* Kasirye Obj., ECF No. 128.  Factory Mutual first argues Dr. Kasirye's

15   knowledge about the presence of COVID-19 at plaintiffs' properties is irrelevant because the

16   presence of COVID-19 does not establish coverage.  *Id.* at 2.  However, as plaintiffs argue in

17   response, and as discussed later in this order, Dr. Kasirye's knowledge about the presence of

18   COVID-19 on or near plaintiffs' properties is relevant to whether plaintiffs can establish they are

19   entitled to Civil Authority coverage for their losses.  *See* Kasirye Obj. Reply at 2, ECF No. 138.

20          In the alternative, Factory Mutual contends Dr. Kasirye's declaration lacks foundation and

21   goes beyond her personal knowledge, because she relays what other public health officials knew

---

[1] With two exceptions, the court uses the pagination automatically generated by the CM/ECF system.  First, for deposition transcripts, the court cites instead to the page numbers on the reporters' transcript.  Second, for the disputed insurance policy, the court cites to the page numbers on the original policy.

[2] Defendant subsequently filed a motion for leave to file a notice of supplemental authority.  *See* Suppl. Authority Notice, ECF No. 144.  Plaintiffs responded and argued defendant's motion improperly contained argument in violation of this court's standing order. *See* Response, ECF No. 145.  A party may file a notice of supplemental authority without the court's approval.  E.D. Cal. L.R. 230(m)(2).  The court has considered the authority but has not reviewed any improper argument.  Defendant's motion is **denied as moot**.

1   about the methods of transmission of COVID-19 and actions by the Centers for Disease Control

2   and Prevention (CDC).  *See* Kasirye Obj. at 4.  Dr. Kasirye states her declaration is based on her

3   personal knowledge given her work as the Public Health Officer for the County of Sacramento.

4   Kasirye Decl. ¶ 1, ECF No. 113.  As part of this work, she "coordinate[s], direct[s] and

5   evaluate[s] the services and programs of the Public Health Department and direct[s] the

6   enforcement of state and County public health laws and regulations." *Id.* ¶ 4.  She is "responsible

7   for issuing Public Health Orders in Sacramento County for businesses and residents." *Id.*  This is

8   sufficient foundation for the statements in her declaration.  *See, e.g.*, *Cleveland v.*

9   *Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 940 (N.D. Cal. 2016) (finding "personal

10  knowledge and competence to testify are often inferable from the facts stated in the affidavit")

11  (citation omitted); *Chamber of Com. of U.S. v. Becerra*, 438 F. Supp. 3d 1078, 1103 (E.D. Cal.

12  2020), *aff'd*, 62 F.4th 473 (9th Cir. 2023) (finding statements qualified as lay opinion testimony

13  under Federal Rule of Evidence 701 in part because declarant's statements were derived from his

14  personal knowledge as president of the company).

15       Factory Mutual also argues part of Dr. Kasirye's testimony about the presence of COVID-

16  19 is an undisclosed expert opinion.  Kasirye Obj. at 2–5.  Dr. Kasirye states she was "confident

17  that the SARS-CoV-2 virus was actually present in the air and on surfaces . . . within UC Davis

18  Medical Center[.]" Kasirye Decl. ¶ 10.  Plaintiffs argue her declaration is fact testimony and lay

19  opinion.  *See* Kasirye Obj. Reply at 4–8.  Plaintiffs do not designate Dr. Kasirye as an expert, *see*

20  Fed. R. Civ. P. 26(a)(2), therefore her testimony must meet the requirements of Federal Rule of

21  Evidence 701 to be admissible, *see* Fed. R. Evid. 701.  Under Rule 701, a lay witness's testimony

22  must be limited to the witness's perception and information that is helpful to clearly

23  understanding the witness's testimony or to determining a fact in issue; it may not be based on

24  scientific, technical, or other specialized knowledge within the scope of Rule 702.  Dr. Kasirye's

25  statements fit that description.  She does not opine as an expert on the SARS-CoV-2 virus, but

26  rather based on her knowledge as the Public Health Officer for the County of Sacramento charged

27  with enforcing public health laws and regulations.  *See* Kasirye Decl. ¶ 4.  Furthermore, as

28  plaintiffs note, the inclusion of this information helps explain why Dr. Kasirye issued certain

1   public health orders related to COVID-19. *See* Fed. R. Evid. 701(b); Kasirye Obj. Reply at 8; *cf.*

2   *Hoffman v. Lee*, 474 Fed. App'x 503, 505 (9th Cir. 2012) (unpublished) (finding district court

3   correctly admitted physician's testimony as a lay witness, because physician "could testify to

4   matters rationally based on his perception").

5        Accordingly, Factory Mutual's objections to Dr. Kasirye's declaration are **overruled**.

6 **III.   UNDISPUTED FACTS**

7        The following facts are undisputed unless otherwise noted. Plaintiff Sacramento

8   Downtown Arena LLC operates the Golden 1 Center (the "Arena"), an event venue in downtown

9   Sacramento, California. John Rinehart Depo. Tr. at 100:4–6, Laura Lin Decl. Ex. B, ECF No.

10   104-2. Plaintiff Sacramento Kings Limited Partnership owns the Sacramento Kings professional

11   basketball team. *Id.* at 96:2–4. Plaintiff Sac Mubi Hotel, LLC owns the Kimpton Sawyer Hotel,

12   which is next to the Arena. Paul Faries Depo. Tr. at 58:5–7, Lin Decl. Ex. C, ECF No. 104-3[3];

13   Pls.' SUMF Opp'n No. 3, ECF No. 130. Plaintiff SGD Retail LLC owns retail spaces in the

14   Downtown Commons or "DOCO." Faries Depo. Tr. at 50:6–8.

15       In 2019, Jeff Dorso, plaintiffs' Senior Vice President and General Counsel, met with Alan

16   Pearson, Factory Mutual's Senior Business Development Executive, and Karrie Branson, HUB's

17   Vice President and Account Executive, to discuss Factory Mutual's "Global Advantage"

18   insurance policy. Jeffrey K. Dorso Depo. Tr. at 82:9–12, Mark L. Hejinian Decl. Ex. 3, ECF

19   No. 110-1; Karrie Branson Depo. Tr. at 82:12–15, Mark L. Hejinian Decl. Ex. 4, ECF No. 110-1;

20   Alan Pearson Depo. Tr. at 112:7–9, Mark L. Hejinian Decl. Ex. 5, ECF No. 110-1; Def.'s SUMF

21   Opp'n No. 1, ECF No. 126. The next day, plaintiffs purchased an insurance policy (the "Policy")

22   from defendant, for the period between September 16, 2019, and September 16, 2020. *See* Def.'s

23   SUMF Opp'n No. 5; Policy.[4]

24       The Policy "covers property, as described in th[e] Policy, against ALL RISKS OF

25   PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded[.]" Policy at 1. It covers the

---

[3] Plaintiffs also provide portions of this same transcript. *See* Faries Depo. Tr., Mark L. Hejinian Decl. Ex. 24, ECF No. 110-1.

[4] Both parties provided the court with a copy of the Policy. *See* Mark L. Hejinian Decl. Ex. 8, ECF No. 110-1; Laura Lin Decl. Ex. A, ECF No. 104-1.

costs to repair or replace physically lost or damaged property up to $850,000,000, subject to certain limits. *Id.* at 2. The policy does not define the phrase "physical loss or damage." *See generally id.* It does, however, include a specific section for "property damage," *see id.* at 7–32, which details what constitutes "insured property" and "excluded property," *id.* at 9. Part of the "property damage" section describes other "additional coverages." *Id.* at 15. The first sentence under this subsection states, "This Policy includes the following Additional Coverages for[5] insured physical loss or damage." *Id.* These additional coverages are "subject to the Policy provisions, including applicable exclusions and deductibles." *Id.* One additional coverage relates to "Communicable Disease Response":

> If a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by:
>
> 1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or
>
> 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease,
>
> this Policy covers the reasonable and necessary costs incurred by the Insured at such location with the actual not suspected presence of communicable disease for the:
>
> 1) cleanup, removal and disposal of the actual not suspected presence of communicable diseases from insured property; and
>
> 2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of communicable diseases on insured property.

/////

---

[5] Plaintiffs request the court take judicial notice of the Merriam-Webster definitions of the word "for." Pls.' Second RJN, ECF No. 132. This includes a definition that defines "for" "as being or constituting." Merriam-Webster Definition, Mark L. Hejinian Decl. Ex. 80, ECF No. 131-1. This unopposed request is **granted**. *See Chavoya v. Merrill Gardens L.L.C.*, No. 24-00268, 2024 WL 3219724, at *1 (E.D. Cal. June 28, 2024) (granting request for judicial notice of certain dictionary definitions); *see also Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (collecting cases).

> This Additional Coverage will apply when access to such location is limited, restricted or prohibited in excess of 48 hours.

*Id.* at 20 (emphasis omitted). A communicable disease is a disease which is "transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges[.]" *Id.* at 62. The parties agree COVID-19, which is caused by SARS-CoV-2, a virus, is a "communicable disease" as defined under the Policy. Def.'s Resp. to Pls.' Req. for Admis. No. 5, Mark L. Hejinian Decl. Ex. 9, ECF No. 110-1; Def.'s SUMF No. 17. Unlike the other provisions, the Communicable Disease Response provision is subject to a $1,000,000 annual aggregate sublimit. Policy at 3.

The property damage section also details several exclusions. *Id.* at 9. As relevant here, the Policy excludes coverage "unless otherwise stated" for "loss of market or loss of use." *Id.* The Policy also contains an exclusion for "contamination":

> This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:
>
> 1) contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured. . . .

*Id.* at 12 (emphasis omitted). "Contamination" and "contaminant" are defined. A contaminant is "anything that causes contamination," and contamination is "any condition of property due to the actual or suspected presence of any . . . virus" among other things. *Id.* at 62 (emphasis omitted).

After the property damage section, the Policy includes another section for "Time Element" coverage. *See id.* at 33–53. This section provides coverage for losses "directly resulting from physical loss or damage of the type insured . . . to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES[.]" *Id.* at 33. This includes coverage for gross earnings and gross profit loss. *Id.* at 34–36. Gross earnings cover the insured's "(a) Gross Earnings; (b) less all

charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services; (c) plus all other earnings derived from the operation of the business[.]" *Id.* at 34. Meanwhile, gross profits cover the insured's "a) Reduction in Sales and b) Increase in Cost of Doing Business." *Id.* at 35. Gross profit loss is limited to twelve months. *Id.* at 4.

The Time Element section also includes "Time Element Coverage Extensions." *See id.* at 43–53. Among these coverage extensions is a list of "Supply Chain Time Element Coverage Extensions," *id.* at 45, which includes a subheading related to losses incurred as a result of civil or military orders:

> This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured location provided such order is the direct result of physical damage of the type insured at the insured location or within five statute miles/eight kilometers of it.

*Id.* at 45 (emphasis omitted). Civil or Military Authority Coverage is limited to 30 days. *Id.* at 3.

Later on, in a list of "Additional Time Element Coverage Extensions," there is a subheading for "Interruption by Communicable Disease":

> If a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by:
>
> 3) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or
>
> 4) a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease,
>
> this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such location with the actual not suspected presence of communicable disease.

/////

/////

1
2

> This Extension will apply when access to such location is limited,
> restricted, or prohibited in excess of 48 hours.

3   *Id.* at 51 (emphasis omitted).  Like Communicable Disease Response coverage, the Interruption

4   by Communicable Disease provision is limited to $1,000,000 annual aggregate.  *Id.* at 4.  Further,

5   the Policy states Interruption by Communicable Disease and Communicable Disease Response

6   "coverage combined shall not exceed" $1,000,000 annual aggregate.  *Id.* at 3, 4.

7          On March 11, 2020, while the Policy was in effect, the Sacramento Kings were set to play

8   a basketball game against the New Orleans Pelicans at the Arena.  James Rasmussen Decl. ¶ 3,

9   ECF No. 114.  Before tip-off, the game was canceled because it was determined that COVID-19

10   was in the building.  *Id.*; Matina Kolokotronis Depo. at 79:6–20, Mark L. Hejinian Decl. Ex. 17,

11   ECF No. 110-1; Alex Rodrigo Decl. ¶ 2. ECF No. 112.  Several other events that had previously

12   been scheduled in the Arena were cancelled during that same time frame as well.  James

13   Rasmussen Depo. Tr. at 77:9–13, Lin Decl. Ex. P, ECF No. 104-16; Alex Rodrigo Depo. at

14   186:24–187:4, Mark L. Hejinian Decl. Ex. 18, ECF No. 110-1.  And between March 19, 2020,

15   and June 1, 2021, Dr. Kasirye, Sacramento County's Public Health Officer, issued a series of

16   public health orders in part to prevent the spread of COVID-19.[6]  First Public Health Order, Mark

17   L. Hejinian Decl. Ex. 25, ECF No. 110-1 (dated March 19, 2020); Final Public Health Order,

18   Mark L. Hejinian Decl. Ex. 49, ECF No. 110-1 (dated June 1, 2021).

19          Plaintiffs believed the Policy covered the over $1,000,000 in losses they incurred.  *See*

20   *generally* Compl., ECF No. 1; Loss Information, Mark L. Hejinian Decl. Ex. 60, ECF No. 123

21   (outlining financial loss plaintiffs incurred); *see also* Second Factory Mutual Letter, Mark L.

22   Hejinian Decl. Ex. 63, ECF No. 110-3.  In April 2020, plaintiffs informed Factory Mutual they

23   were moving forward with a claim.  First Claim Email, Mark L. Hejinian Decl. Ex. 52, ECF No.

---

[6] Plaintiffs request the court take judicial notice of these public health orders, which are publicly accessible on the Sacramento County website.  *See generally* Pls.' First RJN, ECF No. 108.  Factory Mutual does not dispute the authenticity of these orders.  *See* Def.'s SUMF No. 32. This request is **granted**.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted) (noting under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record"); *Abshire v. Newsom*, No. 21-00198, 2021 WL 3418678, at *2 (E.D. Cal. Aug. 5, 2021), *aff'd*, No. 21-16442, 2023 WL 3243999 (9th Cir. May 4, 2023) (taking judicial notice of orders by state, county, and town but not truth of order's contents).

1   110-2.  A few months later, in July, they submitted an "Initial Proof of Loss" and explained their

2   claim was for "time element losses that will include, but are not limited to, losses covered by (1)

3   orders issued by a Civil or Military Authority pursuant to the 'Civil or Military Authority' and/or

4   (2) the 'Contingent Time Element Extended' extensions in the Policy and pursuant to all other

5   applicable provisions."  Second Claim Email, Mark L. Hejinian Decl. Ex. 53, ECF No. 110-2.  In

6   response, a Senior Adjuster from Factory Mutual stated,

> [t]he presence of COVID-19 at an insured location does not
> constitute 'physical damage of the type insured' as required under
> [the Policy's Civil or Military Authority and Contingent Time
> Element Extended] provisions.  Accordingly, the Policy's Civil or
> Military Authority and Contingent Time Element Extended
> provisions (and other Policy provisions requiring physical loss or
> damage of the type insured) do not respond based on the information
> presented.

15   First Factory Mutual Letter at 8, Mark L. Hejinian Decl. Ex. 54, ECF No. 110-2.  However, the

16   Senior Adjuster noted that based on the information provided, coverage for plaintiffs' losses from

17   COVID-19 could be found in the "Communicable Disease coverages, assuming the conditions of

18   those coverages [were] satisfied."  *Id.*

19        In December 2021, plaintiffs provided Factory Mutual with test results showing

20   individuals had tested positive with COVID-19 while present at the Arena between June 23, 2020

21   and July 24, 2020.  Loss Information.  Subsequently, Factory Mutual determined plaintiffs' losses

22   were covered under the Policy's Communicable Disease Response and Interruption by

23   Communicable Disease provisions, quoted above.  Second Factory Mutual Letter.  Factory

24   Mutual acknowledged plaintiffs' losses exceeded $1,000,000 but stated plaintiffs' recovery under

25   the policy was limited to $1,000,000 under the Annual Aggregate sublimit.  *Id.*  Factory Mutual

26   issued plaintiffs a check for $1,000,000.  Factory Mutual Check, Mark L. Hejinian Decl. Ex. 62,

27   ECF No. 110-3.

28        Plaintiffs then filed the instant diversity action, alleging breach of contract, declaratory

29   relief and bad faith denial of coverage.  *See generally* Compl.  Factory Mutual moved to dismiss

30   the complaint, *see* MTD, ECF No. 10, which this court denied, *see* Prior Order (Oct. 28, 2024),

1    ECF No. 45.  The court also denied Factory Mutual's motion for reconsideration of that decision.

2    *See* Reconsideration Mot., ECF No. 50; Hr'g Mins., ECF No. 61; Hr'g Tr., ECF No. 68.  The

3    parties then filed the instant cross motions for summary judgment.  *See* Def.'s Mot.; Def.'s Mem.;

4    Pls.' Mot., ECF No. 105; Pls.' Mem.

5    **IV.    LEGAL STANDARD**

6        **A.    Summary Judgment**

7        Summary judgment is appropriate if "there is no genuine dispute as to any material fact

8    and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is

9    "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

10   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome

11   of the suit under the governing law." *Id.*

12       The party moving for summary judgment must first show no material fact is in dispute.

13   *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  It can do so by showing the record

14   establishes facts beyond genuine dispute, or it can show the adverse party "cannot produce

15   admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  The nonmoving party must

16   then "establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v.*

17   *Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  Both must cite "particular parts of materials in the

18   record[.]" Fed. R. Civ. P. 56(c)(1)(A).  The court views the record in the light most favorable to

19   the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita*, 475 U.S.

20   at 587–88; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

21       Cross-motions for summary judgment are evaluated separately under the same standard,

22   "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Am. C.L.*

23   *Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003) (citations omitted).

24       **B.    Interpretation of Insurance Policies**

25       In this diversity action, the court applies California law to interpret the Policy.  *See*

26   *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008).

27   The ordinary rules of contract interpretation govern the interpretation of insurance policies under

28   California law. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).  The court must

1   interpret the Policy's language "in context, with regard to its intended function[.]" *Bank of the*

2   *West v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992) (citation omitted).  "If contractual language

3   is clear and explicit, it governs." *Id.* at 1264.  But if language is capable of two or more

4   reasonable interpretations, the resulting ambiguity is generally resolved in favor of coverage to

5   protect the "objectively reasonable expectations of the insured." *AIU Ins. Co. v. Superior Ct.*,

6   51 Cal. 3d 807, 822 (1990) (citations omitted).  Coverage clauses are interpreted broadly "so as

7   to afford the greatest possible protection of the insured, whereas exclusionary clauses are

8   interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648

9   (2003) (alterations omitted) (quoting *White v. W. Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985)).

10  "Contract interpretation, including the resolution of any ambiguity, is solely a judicial function,

11  unless the interpretation turns on the credibility of extrinsic evidence." *Legacy Vulcan Corp. v.*

12  *Super. Ct.*, 185 Cal. App. 4th 677, 688 (2010) (citation omitted).

13  **V.    ANALYSIS**

14         The parties' arguments can be distilled into raising the following issues: (1) whether this

15  court's prior order denying Factory Mutual's motion to dismiss constitutes the "law of the case";

16  (2) whether the contamination or loss of use exclusion in the Policy precludes coverage;

17  (3) whether plaintiffs are entitled to general Time Element coverage; (4) whether plaintiffs are

18  entitled to Civil Authority coverage; and (5) whether plaintiffs' claims are subject to a

19  $1,000,000, sublimit.

20         **A.    Law of the Case**

21         "The law-of-the-case doctrine generally provides that when a court decides upon a rule of

22  law, that decision should continue to govern the same issues in subsequent stages in the same

23  case." *Musacchio v. United States*, 577 U.S. 237, 245 (2016) (citation and quotation marks

24  omitted).  "The doctrine applies most clearly where an issue has been decided by a higher court;

25  in that case, the lower court is precluded from reconsidering the issue and abuses its discretion in

26  doing so except" in three limited circumstances. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d

27  1035, 1042 (9th Cir. 2018).  First, a court may revisit a prior decision if circumstances

28  demonstrate the earlier ruling was "clearly erroneous and would work a manifest injustice."

1    *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983) (citation omitted).  Second, a court can revisit

2    a decision if "substantially different evidence was adduced at a subsequent trial," *Minidoka*

3    *Irrigation Dist. v. U.S. Dep't of Interior*, 406 F.3d 567, 573 (9th Cir. 2005) (citation omitted); or

4    when an intervening controlling change in the law warrants reexamination of the prior ruling, *id.*;

5    *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986).  "Failure to apply the doctrine of the

6    law of the case absent one of the [exceptions] constitutes an abuse of discretion." *United States v.*

7    *Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (citation omitted).  However, the law of the case

8    doctrine does not preclude a court from reassessing its own legal rulings in the same case.  *Askins*,

9    899 F.3d at 1042 (citations omitted).

10    Plaintiffs argue this court's interpretation of the Policy is the law of this case.  Pls.' Mem.

11    at 14–16; Pls.' Reply at 6–7.  Factory Mutual disagrees.  *See* Def.'s Opp'n at 25; Def.'s Reply at

12    12.  According to Factory Mutual, "the denial of a motion to dismiss is never the law of the case."

13    Def.'s Opp'n at 25 (emphasis, ellipsis and citation omitted).  In making this argument, Factory

14    Mutual relies on *Codding v. Pearson Educ., Inc.*, a case decided in the Northern District of

15    California, which the Ninth Circuit affirmed in an unpublished opinion.  No. 18-00817,

16    2019 WL 5864579 (N.D. Cal. Nov. 8, 2019), *aff'd*, 842 Fed. App'x 70 (9th Cir. 2021)

17    (unpublished).  In *Codding*, the court found the law of the case doctrine did not bar a party from

18    making a contrary argument about the interpretation of an agreement at the summary judgment

19    stage.  *Id.* at 17 n.86. Furthermore, in finding the doctrine did not apply, the court noted it had

20    previously "expressly refrained" from deciding the contested issue.  *Id.*

21    Here, unlike in *Codding*, this court previously analyzed the Policy and determined it was

22    susceptible to more than one reasonable interpretation.  *See* Prior Order (Oct. 28, 2022) at 9

23    (finding both insured and insurer proposed reasonable interpretations).  In accordance with its

24    reading of California law, the court resolved the motion in favor of coverage and found plaintiffs

25    had stated a claim upon which relief could be granted.  *Id.*  A court's interpretation of an insurance

26    policy is a question of law.  *Truck Ins. Exch. v. Kaiser Cement & Gypsum Corp.*,

27    16 Cal. 5th 67, 91 (Cal. 2024).  Other federal district courts have thus adhered to their previous

28    interpretations of an insurance policy under the law-of-the-case doctrine.  *See, e.g.*, *Porch v.*

1   *Preferred Contractors Ins. Co.*, No. 18-102, 2019 WL 4017194, at *3 (D. Mont. Aug. 26, 2019)

2   (finding its prior ruling regarding policy should stand under the "law of the case" doctrine), *aff'd*,

3   819 Fed. App'x 560 (9th Cir. 2020) (unpublished); *Berman v. AMEX Assur. Co.*, No. 08-1051,

4   2011 WL 717332, at *9 (C.D. Cal. Feb. 22, 2011) (declining to revisit its decision that exclusions

5   in policy were ambiguous); *El Cajon Luxury Cars, Inc. v. Tokio Marine & Nichido Fire Ins. Co.,*

6   *Ltd.*, No. 11-1248, 2012 WL 728050, at *2 (S.D. Cal. Mar. 6, 2012) (finding similarly).

7   Accordingly, the law of the case doctrine is applicable here unless the court decides to revisit its

8   prior legal ruling, or an exception applies.  *See Askins*, 899 F.3d at 1042 ("The law-of-the-case

9   doctrine generally provides that 'when a court decides upon a rule of law, that decision should

10   continue to govern the same issues in subsequent stages in the same case." (citation omitted)).

11          Factory Mutual argues this court should revisit its prior order in light of an intervening

12   decision by the California Supreme Court.  *See* Def.'s Opp'n at 25 (citing *Another Planet Ent.,*

13   *LLC v. Vigilant Ins. Co.* (*Another Planet*), 15 Cal. 5th 1106 (Cal. 2024)).  In *Another Planet*, the

14   California Supreme Court held that "generally" the "actual or potential presence of COVID-19 on

15   an insured's premises generally does not constitute direct physical loss or damage to property

16   within the meaning of a commercial property insurance policy under California law."  15 Cal. 5th

17   at 1118.  According to Factory Mutual, the California Supreme Court's decision in *Another*

18   *Planet* is "fatal" to plaintiffs' case.  Def.'s Mem. at 13.

19          While this court, sitting in diversity, is bound by the decision of California's highest state

20   court, *see Clark v. Eddie Bauer LLC*, 30 F.4th 1151, 1154 (9th Cir. 2022) (citation omitted), the

21   state supreme court's decision in *Another Planet* does not require a different interpretation here

22   than the court adopted in its previous order.  *Another Planet* involved a Vigilant Insurance

23   Company policy with different terms and organizational structure than the Factory Mutual Policy

24   at issue here.  *Compare* Compl., *Another Planet Ent., LLC v. Vigilant Ins. Co.*, No. 20-07476,

25   (N.D. Cal. Oct. 23, 2020), ECF No. 1-1 *with* Policy.  In reaching its decision in *Another Planet*,

26   the California Supreme Court acknowledged that property insurance policies can include "many

27   specialized policies and coverage extensions," including coverage extensions related to

28   communicable disease events.  *Another Planet Ent., LLC*, 15 Cal. 5th at 1146.  However, the state

1   Court noted it did not need to consider such coverage extensions, because they were "not part of

2   Another Planet's insurance policy[.]"  *Id.* at 1146–47.  In other words, as plaintiffs argue, the

3   California Supreme Court did not state its ruling applied to all insurance policies regardless of

4   their terms, nor did it limit parties' ability to contractually modify the default definition of

5   "property loss or damage."  *See* Pls.' Reply at 8.  The Factory Mutual policy at issue in this case

6   includes provisions that could be interpreted as "defining the presence of 'communicable disease'

7   as 'physical loss or damage.'"  *See* Prior Order (Oct. 28, 2022) at 6.  The court finds no reason to

8   revisit its prior decision on the basis of *Another Planet*.  *But see Live Nation Ent., Inc. v. Factory*

9   *Mut. Ins. Co.*, No. 21-00862, 2024 U.S. Dist. LEXIS 183985, at *24 (C.D. Cal. Oct. 8, 2024)

10  (rejecting plaintiff's argument that the Communicable Disease provision in the Policy

11  distinguished it from the policy at issue in *Another Planet*).

12      However, Factory Mutual also argues the court should revisit its prior decision given the

13  relatively recent California Appellate Court decision in *San Jose Sharks, LLC v. Superior Court*

14  (*San Jose Sharks*).  *See generally* 98 Cal. App. 5th 158 (2023), *review denied* (Apr. 10, 2024),

15  *disapproved in part on other grounds by Another Planet*, 15 Cal. 5th 1106.  On this point, as

16  explained below, the court agrees.

17      **B.      Contamination Exclusion**

18      Factory Mutual argues summary judgment should be entered in its favor for the

19  independent reason that the Contamination Exclusion bars plaintiffs' claim.  Def.'s Mem. at 22;

20  Def.'s Reply at 8.  As set forth above, "unless directly resulting from other physical damage not

21  excluded by this Policy" the Contamination exclusion bars coverage for "contamination, and any

22  cost due to contamination including the inability to use or occupy property or any cost of making

23  property safe or suitable for use or occupancy."  Policy at 12 (emphasis omitted).

24      Previously, the court held the contamination exclusion did not bar coverage.  *See* Prior

25  Order (Oct. 28, 2022) at 8–9.  However, after this court issued its decision, the California Court

26  of Appeal issued a ruling in *San Jose Sharks*, which analyzed the same contamination exclusion

27  in the same Factory Mutual policy at issue here.  *See generally* 98 Cal. App. 5th at 158–74 .  In

28  *San Jose Sharks*, the Court of Appeal held the policy "unambiguously exclude[s] physical loss or

14

1  damage in the form of viral contamination from the scope of coverage." *Id.* at 171.  In reaching

2  its decision, the Court of Appeal expressly disagreed with this court's prior decision finding the

3  contamination exclusion ambiguous.  *Id.* at 172 n.9.

4          "[W]hen (1) a federal court is required to apply state law, and (2) there is no relevant

5  precedent from the state's highest court, but (3) there is relevant precedent from the state's

6  intermediate appellate court, the federal court must follow the state intermediate appellate court

7  decision unless the federal court finds convincing evidence that the state's supreme court likely

8  would not follow it." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007)

9  (emphasis omitted).  "[W]here there is no convincing evidence that the state supreme court would

10  decide differently, a federal court is obligated to follow the decisions of the state's intermediate

11  appellate courts." *Id.* (citation and quotation marks omitted).  According to Factory Mutual,

12  because *San Jose Sharks* is the only California state appellate opinion addressing Factory

13  Mutual's Contamination Exclusion in a COVID-19 case, this court must follow that opinion and

14  grant summary judgment in Factory Mutual's favor.  Def.'s Mem. at 23 (citing *Kaiser v. Cascade*

15  *Capital, LLC*, 989 F.3d 1127, 1132 (9th Cir. 2021)).

16          Plaintiffs disagree.  According to plaintiffs, *San Jose Sharks* is not controlling because it

17  was based on a different alleged ambiguity, decided at a different procedural stage and on a

18  different factual record.  Pls.' Opp'n at 13.  Specifically, in *San Jose Sharks*, the plaintiffs there

19  construed the Contamination Exclusion to exclude only "(1) the diminution of property value due

20  to contamination; and (2) any cost due to contamination[.]"  98 Cal. App. 5th at 171–72.  The

21  Court of Appeal found this interpretation "untenable." *Id.* at 172.  In making this determination,

22  the Court of Appeal observed plaintiffs' construction would require the court "to disregard the

23  structure of the contract . . . and to tailor the definition of 'contamination' to fit plaintiffs'

24  coverage claim in lopsided hindsight bereft of textual support." *Id.*

25          As plaintiffs note, because *San Jose Sharks* was on appeal from a trial court decision on

26  demurrer, the Court of Appeal did not have the same developed factual record when issuing its

27  decision as the court does here.  Pointing to various pieces of extrinsic evidence, plaintiffs argue

28  this new evidence supports their interpretation of the Policy, that "physical loss or damage"

1  includes "losses resulting from the presence of a communicable disease at an insured location."

2  Pls.' Mem. at 17; Pls.' Reply at 11.

3       Defendants argue extrinsic evidence should not be considered because the Policy is

4  unambiguous.  *See* Def.'s Opp'n at 14 n.7, 22.  However, "[e]ven if a contract appears

5  unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals

6  more than one possible meaning to which the language of the contract is yet reasonably

7  susceptible."  *Another Planet*, 15 Cal. 5th at 1144 (quoting *Dore v. Arnold Worldwide, Inc.,*

8  39 Cal. 4th 384, 391 (2006)).  Therefore, even though the Court of Appeal determined the

9  Contamination Exclusion was unambiguous, and disagreed with this court's prior order, if the

10  extrinsic evidence before this court demonstrates the contamination exclusion is susceptible to

11  plaintiffs' reasonable interpretation in this action, the court might find the California Supreme

12  Court would not follow *San Jose Sharks*.  *See AIU Ins. Co*, 51 Cal. 3d at 822 (resolving

13  ambiguity in favor of insured).  The court thus turns to the extrinsic evidence plaintiffs provide to

14  determine whether it in fact exposes a latent ambiguity in the Contamination Exclusion provision.

15       In doing so, the court keeps in mind the precise language of the Contamination Exclusion,

16  which disallows coverage "unless directly resulting from *other physical damage not excluded* by

17  th[e] Policy[.]"  Policy at 12 (emphasis added).  According to plaintiffs, the Policy "expressly

18  provides 'additional coverage' for 'physical loss or damage' caused by 'communicable disease.'"

19  Pls.' Mem. at 21.  They say because "contamination resulting from" the presence of

20  communicable disease is included under the policy, the Contamination Exclusion provision does

21  not exclude it.  *Id.*  To support this interpretation, plaintiffs point to various pieces of extrinsic

22  evidence.

23       First, plaintiffs cite to a 2016 email, which they describe as showing a Factory Mutual

24  employee "reached the same understanding . . . that the presence of communicable disease was

25  physical loss or damage."  Pls.' Mem. at 19; Factory Mutual Email, Mark L. Hejinian Decl. Ex.

26  69, ECF No. 110-3.  In the email, Richard Sunny, Factory Mutual's Operations Vice President

27  and Operations Claims Manager, noted "several coverage intent questions" had come up during a

28  recent training event.  Factory Mutual Email at 80.  One question related to a hypothetical

1   communicable disease response event.  *Id.* at 81.  In the hypothetical event, the presence of a

2   communicable disease next door to the insured's property prohibited access to the insured's

3   premises.  *Id.*  Sunny initially interpreted the Policy to provide "cover" for the communicable

4   disease response event in the hypothetical.  In reaching this conclusion, Sunny stated the

5   "physical damage would be 'of the type insured' [and] cover may indeed be found under

6   Civil/Military Authority[.]"  *See* Factory Mutual Email at 81.  Another Factory Mutual employee

7   responded to the email, disagreeing with Sunny's interpretation, advancing an interpretation

8   similar to the one Factory Mutual now proposes.  *Id.*

9        Plaintiffs argue that because a Factory Mutual employee also understood the phrase

10   "communicable disease to be physical damage that could trigger TIME ELEMENT coverages,

11   including CIVIL OR MILITARY AUTHORITY," this proves their interpretation is reasonable.

12   Pls.' Reply at 11.  Factory Mutual disagrees and argues "this email exchange does not indicate

13   that the Policy (nor Factory Mutual) deems the presence of communicable disease to itself be

14   'physical loss or damage.'"  Def.'s Opp'n at 24.  The court is persuaded by Factory Mutual's

15   argument.  Contrary to plaintiffs' suggestion, in his email Sunny does not interpret

16   "communicable disease to be physical damage."  *Id.*  Rather, Sunny states that because the

17   communicable disease event occurred next door, "there is no physical damage at our Client's

18   premises[.]"  Factory Mutual Email at 81.  In other words, Sunny does not interpret the Policy to

19   modify the term "physical loss or damage" to include losses resulting from the presence of a

20   communicable disease at an insured location.

21        Second, plaintiffs point to evidence that Factory Mutual presented its clients with a

22   marketing flyer, which discussed the communicable disease coverage provided under its Policy.

23   Marketing Flyer, Mark L. Hejinian Decl. Ex. 7, ECF No. 110-1; Mark Wakefield Depo. Tr. at

24   76:8–11, 140:2–20, Mark L. Hejinian Decl. Ex. 68, ECF No. 110-3.  Under "Coverage

25   Highlights" the flyer states, "Time element recovery can be on a Gross Profit basis[.]"  Marketing

26   Flyer.  Under the Policy, "gross profit" is listed under the general Time Element coverages.

27   Policy at 35.  As noted above, Gross profit loss "is the Actual Loss Sustained by the Insured" and

28   covers the insured's "a) Reduction in Sales and b) Increase in Cost of Doing Business."  *Id.* at 35.

1  Unlike the Communicable Disease Response and Interruption by Communicable Disease

2  provisions, gross profit losses are not subject to the $1,000,000 annual aggregate sublimit.  *See id.*

3  at 2–5.

4       Plaintiff argues that because "gross profit" loss is located in a separate provision from

5  "Interruption by Communicable Disease" it is separate and distinct.  Pls.' Reply at 11.  But this

6  does not mean that the phrase "physical damage" is ambiguous.  While the flyer does state

7  coverage for communicable disease includes recovery on a gross profit basis and does not state

8  anything about the limitations, the limitations are not necessarily inapplicable.  *See, e.g.*, John M.

9  Baker Depo. at 184:4–185:8, Lin Decl. Ex. JJJ, ECF No. 127-2.  In fact, the general Time

10  Element section states Time Element loss "is subject to the Policy provisions, including

11  applicable exclusions and deductibles[.]"  Policy at 33.  Even if "gross profit" appears in a

12  separate section than Interruption by Communicable Disease, this does not indicate

13  communicable disease is physical damage not barred by the contamination exclusion.

14       Third, plaintiffs point to Jeff Dorso's deposition.  During his deposition, Dorso recalled

15  that during the initial meeting to discuss the coverage of the Policy, "the implication was . . . you

16  have physical damage from a communicable disease.  So, the implication is that's a physical

17  damage."  Dorso Depo Tr. at 89:8–11, 94:9–22.  However, during the meeting, "there was no

18  discussion of physical damage in terms of what elements or what constitutes it[.]"  *Id.* at 89:17–

19  23.  Further, Dorso confirmed that "[n]o one from FM told . . . [him] that communicable disease

20  results in covered damage to property."  *Id.* at 91:13–18.  Without more detail, the court cannot

21  find Dorso's testimony shows the term "physical damage" is ambiguous as used in the

22  Contamination Exclusion provision.

23       In sum, plaintiffs' extrinsic evidence does not allow the court to conclude the California

24  Supreme Court would not affirm the part of the *San Jose Sharks* decision regarding the

25  Contamination Exclusion if it reached the question directly.  Therefore, this court is bound by the

26  Appellate Court decision finding the Contamination Exclusion unambiguously bars the coverage

27  plaintiffs seek under this Policy.

1    **VI.**    **CONCLUSION**

2         For the reasons set forth above, defendant's motion for summary judgment is **granted** and

3   plaintiffs' partial motion for summary judgment is **denied as moot**.

4         This order resolves ECF Nos. 101 and 105.

5         IT IS SO ORDERED.

6   DATED: October 18, 2024.

_____
SENIOR UNITED STATES DISTRICT JUDGE